UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

ZONAR SYSTEMS, INC.,
    Plaintiff

v.                                          No.

DAVID E. SULLIVAN and
ZONAR CORPORATION,
    Defendants

## COMPLAINT

The Plaintiff, Zonar Systems, Inc. makes this Complaint against Defendants David E. Sullivan and Zonar Systems for declaratory, legal, and equitable relief.

## INTRODUCTION

1. This is an action for trademark infringement, unfair competition, dilution, and false designation of origin under the Trademark Act of 1947, as amended, U.C.S. § 1051 *et seq.*, and for relief under the Anticybersquatting Consumer Protection Act (ACPA), 15 U.S.C. § 1125(d), as well as for state common law breach of contract.

2. Zonar is one of North America's largest telematics companies, providing technology for fleet operation management, with over 150 million completed inspections.

3. Zonar's brand and trademarks are distinctive, valuable, and well known in the marketplace.

4. Zonar brings this action to seek relief for the Defendants' infringing use of its trademarks and bad faith registration of the domain ZONAR.COM, and Defendants' breach of its agreement to transfer the domain to Plaintiff.

## PARTIES

5.  Plaintiff Zonar Systems, Inc. is a Washington Corporation with a principal place of business at 821 2nd Avenue, Suite 1100, Seattle, Washington, 98104.

6.  On information and belief, Defendant David E. Sullivan is a citizen of Florida, residing at 115 Bamboo Road, Apt. 105, Palm Beach Shores, FL 33404.

7.  On information and belief, Defendant David E. Sullivan holds himself out as doing business as Zonar Corporation. On information and belief, Zonar Corporation was organized as a Virginia corporation but its corporate existence was terminated in 2007.

## JURISDICTION AND VENUE

8.  This Court has jurisdiction over the instant matter pursuant to 28 U.S.C. § 1331.

9.  Venue in this District is proper pursuant to 28 U.S.C. § 1391(b)(1) because Defendant David E. Sullivan resides in this district.

## FACTS

10. Zonar was founded in 2001 in Nevada with a goal of revolutionizing vehicle safety inspections.

11. The founders of Zonar conceived of and patented the first Electronic Vehicle Inspection Report (EVIR®) system, which it marketed and sold under the marks ZONAR, ZONAR (logo), and ZONAR SYSTEMS™ at least as early as 2001.

12. Since that time, Zonar has become one of the largest fleet management support technology companies, providing technology solutions for school transportation, commercial trucking, lease and rental vehicle fleets, as well as vehicle and handheld computers and cameras, device management, telematics, driver tools such as digital forms and navigation, fleet diagnostics for maintenance and safety, software for managing ridership and routes, and many other functions.

13. Zonar provides goods and services to customers all over the United States.

14. Zonar has made substantial investments in is trademarks, branding, and goodwill since its founding, and has actively marketed and promoted its brand since 2001.

15. Zonar currently owns the following active federal trademark registrations:

   a. ZONAR, Reg. No. 2916916, Reg. Date 1/11/2005, Class 9;

   b. ZONAR, Reg. No. 5416803, Reg. Date 3/6/2018, Classes 38, 9, 35, 42, 45;

   c. [ZONAR logo], Reg. No. 5707484, Reg Date 3/26/2019, Classes 38, 9, 35, 42, 45;

   d. ZONAR OTAIR, Reg. No. 6254971, Reg. Date 1/27/2021, Classes 9, 42;

   e. ZONAR FAULTIQ, Reg. No. 6456818, Reg. Date 8/17/2021, Class 42.

16. Zonar's registrations are prima facie evidence of the validity of the registered marks, its ownership of the marks, and of its exclusive right to the marks in U.S. commerce.

17. Zonar also has common law rights in numerous other marks, including ZONAR SYSTEMS™, ZONAR V4™, ZONAR MYVIEW™, ZONAR COACH™, ZONAR MOBILECOMAND™, and others.

18. Over time, Zonar has developed a family of ZONAR marks, including those listed above (the "ZONAR Marks").

19. For more than two decades, Zonar has extensively advertised and promoted its software, software as a service, mobile computers, computerized databases, communication services and other goods and services in association with the ZONAR Marks.

20. Zonar's mark is so famous and well known that its handheld computers are known affectionately by users as "Zonars."

21. The customer recognition of the goods and services offered under the ZONAR Marks is evidenced by the success that Zonar has enjoyed in the marketplace, as well third party recognition, including the 2024 Gold Stevie award for Company of the Year in transportation, the 2021 Business Intelligence Group's Excellence in Artificial Intelligence award for ZONAR COACH$^{TM}$, multiple One Planet and Best in Biz awards, as well as many others.

22. Zonar's primary website is ZONARSYSTEMS.COM.

23. On information and belief, Defendant ceased doing business as Zonar Company in or about 2004, over twenty years ago.

24. Defendant is the owner of the domain ZONAR.COM (the "Domain").

25. Over the years, Defendant's ownership of the ZONAR.COM domain has caused significant customer confusion.

26. From at least 2010 until approximately January 1, 2025, Defendant included a link on its website redirecting confused customers to Zonar's website, ZONARSYSTEMS.COM:



27. Defendant has unfairly benefited from Zonar's fame and goodwill by using Zonar's registered mark as its domain name.

28. On information and belief, Defendant claims common law rights in the mark ZONAR.

29. On information and belief, to the extent Defendant ever accrued any rights in the mark ZONAR under the common law, which Zonar denies, Defendant abandoned such rights by years of non-use.

30. On information and belief, Defendant is not currently using and has not used the mark ZONAR in commerce, in over twenty years.

31. In or about December 2024, Defendant contacted Zonar about his intent to retire and desire to sell the Domain to Zonar. Defendant and Zonar reached agreement to transfer the Domain.

32. Specifically, on December 19, 2024, Zonar's Senior Vice President of Marketing wrote to Defendant via email to confirm the terms of Defendant's agreement to transfer the Domain to Zonar for substantial consideration, stating:

> Via this email, I'd like to introduce you to Kara Thorvaldsen, our attorney from Lawson Weitzen, LLP, who is going to help us do the domain transfer as painlessly as possible! She will catch up with you directly, but here are the steps to expect:
>
> 1. Kara will draw up a simple sale agreement for us both to sign.  This will include our commitment to 24-months of email forwarding.
> 2. We will need to know exactly which email addresses you need forwarded (about a dozen I think you mentioned?)
> 3. Where would you like the emails forwarded to?
> 4. We will be sending $60K to Lawson Weitzen, and they will distribute the funds directly to you upon completion of the sale.

5

This plan seemed a lot more streamlined than working with escrow, etc.  I hope this is acceptable to you – if you have any detailed questions, I know Kara will be able to answer them for you. She, too, is on the eastern time zone. 😊

I am out of office thru January 3rd but will be checking emails to make sure things keep moving smoothly.  Thank you again for your willingness to sell. You have been so kind all these years keep our redirect on your home page, and I'm glad we finally found hand-off timing that works for all.

33.     On the same date, December 19, 2024, Defendant responded:

I have identified all the zonar.com email addresses currently in use (there are 21), and the fewer ones I need to have forwarded - like dave@zonar.com. There are others, such as info@zonar.com, that you will probably want to use but you may get messages from entities with old contact lists looking for our zonar. Almost all of these will be spam or obsolete sales stuff that does not need to be forwarded, but you need to be aware of it (just as I had to handle people looking for your zonar).

I have gotten antigena.com (for Maggie & Dave Sullivan) as the replacement email domain and am in the process of setting it up. Besides forwarding xxxx@zonar.com to xxxx@mdsul.com, I would appreciate your setting up an autoresponder to send email back to the sender with a notice about our domain change. I'll provide text for that as well.
Do you have a time frame for going live with zonar.com My plan was to set up my own forwarders and autoresponders at zonar.com, test them, and confirm all is working. This could take a week or two.

34.     Later that day, Zonar's Vice President responded:

We will not be switching over to zonar.com immediately due to the complexity of site dev work we'll need to do, as well as defining a strategy for our additional product platform URLs and things like new business cards, etc.; this will take time in Q1 before we are ready for go live.

If we can try to complete the purchase process between now and Jan 3rd and then work through any technical coordination you may need the first week in January, that's great.  If you were done with your testing by mid-January, that would work.  No need to blow up the holiday season unnecessarily.

Our technical contact at Zonar will be Drew.Sanders@zonarsystems.com.  I've talked to him about the plan, and he stands at the ready to assist with the forwarding.  I've cc'd him on this email.

35. On December 19, 2024, Defendant wrote "OK – we can complete sale by 1/3/and coordinate transfer downstream."

36. Zonar's Vice President replied, "Perfecto."

37. Zonar thereafter sent payment of $60,000 to its counsel to hold pending transfer of the Domain.

38. However, on December 25, 2024, Defendant advised Zonar that he would not transfer the Domain for the agreed-upon consideration, and intended to breach the agreement unless he was offered additional compensation.

39. On December 30, 2024, Zonar sent a letter to Defendant advising that his use of ZONAR infringed Zonar's trademark rights and that Defendant's failure to perform under the agreement to transfer was in breach of contract.

40. To date, Defendant has failed and refused to perform under the agreement to transfer the Domain.

41. On information and belief, on or about January 1, 2025, Defendant renewed the registration of ZONAR.COM with the domain host.

42. In addition, on or about January 1, 2025, Defendant removed the link to ZONARSYSTEMS.COM from its website.

43. On information and belief, Defendant's renewal of the Domain was undertaken in bad faith, for the purpose of leveraging more compensation than he had already agreed to accept for the domain transfer.

44. On or about January 9, 2025, Defendant filed an application with the United States Patent and Trademark Office, Serial Number 98948522 (the "Application") to register the mark ZONAR in Class 42 for

Computer software consulting; Computer software design; Computer software development; Advisory services relating to computer software; Consultation services relating to computer software; Debugging computer software for others; Design and development of computer software; Design and writing of computer software; Developing computer software; Installation and maintenance of computer software; Research and development of computer software; Troubleshooting of computer software problems.

45. Defendant filed and signed the application, in which he declared under pains and penalties of perjury that:

    a. The mark is in use in commerce and was in use in commerce as of the filing date of the application on or in connection with the goods/services in the application;

    b. The specimen(s) shows the mark as used on or in connection with the goods/services in the application and was used on or in connection with the goods/services in the application as of the application filing date;

    c. To the best of the signatory's knowledge and belief, the facts recited in the application are accurate;

    d. To the best of the signatory's knowledge and belief, no other persons, except, if applicable, concurrent users, have the right to use the mark in commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other persons, to cause confusion or mistake, or to deceive; and

    e. To the best of the signatory's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the allegations and other factual contentions made above have evidentiary support.

46. On information and belief, Defendant has not used the ZONAR mark in commerce, if at all, sine at least 2007.

47. On information and belief, Defendant is not currently using the ZONAR mark in commerce, or is not using the mark in commerce in connection with all or any of the goods and services described in the Application.

48. Defendant's acts complained of herein are jeopardizing and will continue to jeopardize the valuable property rights and goodwill of Zonar in the ZONAR Marks. Defendants' acts are causing irreparable injury to Zonar and its customers for which there is no adequate remedy at law.

49. Zonar is entitled to legal and equitable relief, including specific enforcement of the contract to transfer the Domain. Zonar was and is willing, able, and ready to perform its part of the bargained-for agreement.

## COUNT I
### Federal Trademark Infringement

50. Plaintiff repeats and realleges the foregoing paragraphs as if set forth fully herein.

51. Defendant's acts as alleged herein constitute trademark infringement and are unlawful under 15 U.S.C. § 1114(1).

52. Defendant's use of Plaintiff's registered mark on its website and as its domain has caused and is likely to cause confusion, mistake, and/or deceive consumers as to the affiliation, connection, and association of Defendant with Zonar, and the endorsement, sponsorship, or approval of Defendant's site by Zonar in violation of U.S.C. § 1114(1).

53. The harm to Plaintiff resulting from the Defendant's wrongful conduct is irreparable, and Defendant should be enjoined from continuing its use and display of Plaintiff's Mark.

54. Upon information and belief, the acts of Defendant complained of herein are willful and deliberate, entitling Zonar to actual damages, attorneys' fees, and costs.

## COUNT II
### Federal Unfair Competition

55. Plaintiff repeats and realleges the foregoing paragraphs as if set forth fully herein.

56. Defendant's acts as alleged herein constitute unfair competition and are unlawful under 15 U.S.C. § 1125(a).

57. Defendant's use of Plaintiff's mark on its website and as its domain has caused and is likely to cause confusion, mistake, and/or deceive consumers as to the affiliation, connection, and association of Defendant with Zonar, and the endorsement, sponsorship, or approval of Defendant's site by Zonar in violation of U.S.C. § 1125(a).

58. The harm to Plaintiff resulting from the Defendant's wrongful conduct is irreparable, and Defendant should be enjoined from continuing its use and display of Plaintiff's Mark.

59. Upon information and belief, the acts of Defendant complained of herein are willful and deliberate, entitling Zonar to actual damages, attorneys' fees, and costs.

## COUNT III
### Federal Dilution

60. Plaintiff repeats and realleges the foregoing paragraphs as if set forth fully herein.

61. Plaintiff's mark ZONAR is famous and distinctive.

62. Plaintiff's reputation and goodwill, and the fame of its mark, are superior to any reputation, goodwill, or fame of the Defendant.

63. Defendant's use of the identical mark ZONAR has caused and is likely to cause, dilution by blurring or dilution by tarnishment of Plaintiff's Marks, in violation of 15 U.S.C. § 1125(c).

64. The harm to Plaintiff resulting from the Defendant's wrongful conduct is irreparable, and Defendant should be enjoined from continuing its use and display of Plaintiff's Mark.

65. Upon information and belief, the acts of Defendant complained of herein are willful and deliberate, entitling Zonar to actual damages, attorneys' fees, and costs.

## COUNT IV
## Federal Anticybersquatting Consumer Protection Act

66. Plaintiff repeats and realleges the foregoing paragraphs as if set forth fully herein.

67. Section 1125(d)(1) creates civil liability for registering (or re-registering), trafficking in, or using a domain name that is "identical or confusingly similar" to a plaintiff's mark, with a "bad faith intent to profit from that mark." 15 U.S.C. § 1125(d)(1)(A).

68. Plaintiff is the owner of the federally registered mark ZONAR and of a family of registered and common law ZONAR Marks.

69. Defendant's domain name, ZONAR, is identical to Plaintiff's federally registered mark, ZONAR.

70. Defendant registered or re-registered the domain ZONAR.COM on or about January 1, 2025, for the purpose of profiting from the registration, in bad faith.

71. Plaintiff seeks injunctive relief requiring the transfer of the Domain from Defendant to Plaintiff.

72. Upon information and belief, the acts of Defendant complained of herein are willful and deliberate, entitling Zonar to actual damages, statutory damages, attorneys' fees, and costs.

## COUNT V
## Breach of Contract/Specific Performance

73. Plaintiff repeats and realleges the foregoing paragraphs as if set forth fully herein

74. Defendant offered to sell the Domain to Plaintiff. Plaintiff accepted the offer. By exchange of emails dated December 19, 2024, the Parties reached a binding and enforceable agreement.

75. The parties agreed on all essential terms of the transaction, including the price and time for performance, and intended to be bound.

76. The law favors compromise and settlement of disputed claims, and the enforcement of settlement agreements.

77. Specific performance is warranted here where the remedy at law is inadequate because the disputed Domain is unique, and the nature of the contract is such that specific performance will not result in great practical difficulties.

78. Accordingly, Plaintiff is entitled to an order of specific performance of the agreement to transfer the Domain to Zonar, for consideration of $60,000 and email forwarding service for two years post-transfer.

79. In the alternative, should the Court decline to order specific performance, Plaintiffs seeks damages for breach of contract in an amount to be determined at trial.

## COUNT VI
## Cancellation of Trademark Application

80. Plaintiff repeats and realleges the foregoing paragraphs as if set forth fully herein.

81. In an action involving a registered mark, district courts have jurisdiction over the trademark applications of parties to the action pursuant to 15 U.S.C. § 1119.

82. On January 9, 2025, Defendant David E. Sullivan filed an application, Serial No. 98948522, for the standard character mark, ZONAR in Class 42 for

> Computer software consulting; Computer software design; Computer software development; Advisory services relating to computer software; Consultation services relating to computer software; Debugging computer software for others; Design and development of computer software; Design and writing of computer software; Developing computer software; Installation and maintenance of computer software; Research and development of computer software; Troubleshooting of computer software problems.

83. The specimen submitted by Defendant in its application is insufficient to show use in commerce.

84. On information and belief, Defendant has not continuously used the ZONAR mark in commerce and is not presently using the ZONAR mark in commerce.

85. On information and belief, Defendant has abandoned the ZONAR mark and has no bona fide intent to resume use of same.

86. On information and belief, Defendant submitted materially false statements to the USPTO in support of its application to register ZONAR.

87. Defendant's application for mark is identical to Plaintiff's registered mark, ZONAR.

88. Defendant's application for mark is confusingly similar to each of Zonar's family of ZONAR Marks.

89. Defendant has applied to register the mark in one of the classes in which Plaintiff's marks are registered, namely, Class 42.

90. Zonar's use of ZONAR and ZONAR (and Design) in Class 42 is in connection with

Design and development of a hand-held computer to acquire data while conducting electronically-verified inspections; Data automation and collection services using proprietary software to evaluate analyze and collect service data for others in the field of inspection data; Database development services for others in the field of inspection data; Custom design and development of computer software for others for conducting electronically-verified inspections using a hand-held computer; Providing a web site featuring temporary use of non-downloadable software for improving the efficiency and effectiveness of vehicle safety, security, and maintenance inspections; Providing a web site featuring temporary use of non-downloadable software for monitoring drivers' hours to comply with hours of service regulations; Providing a web site featuring temporary use of non-downloadable software for dispatch, route management, navigation and two-way messaging; Providing a web site featuring temporary use of non-downloadable software for tracking the status of a specific passenger on a vehicle; Providing a web site featuring temporary use of non-downloadable software for tracking vehicle ridership and for monitoring vehicle speed, vehicle location, vehicle driver data, vehicle diagnostic data, vehicle inspection data; Software as a service (SAAS) services featuring software for use in vehicle fleet management; Computer technical support services, namely, 24/7 service desk or help desk services for IT infrastructure, operating systems, database systems, and web applications; Providing a website featuring technology that enables users to monitor vehicles and passengers to determine when passengers enter and exit a vehicle including dates and times at which the passengers enter and exit, to identify passengers who have entered and exited a vehicle, to determine the speed of a vehicle between stops at which passengers have entered and exited the vehicle, and to provide an on-line report that identifies passengers who have entered and exited a vehicle, that identifies the GPS location and speed of the vehicle, that identifies dates and times that each person entered and exited the vehicle, and that enables a driver to determine that all passengers who entered a vehicle have exited the vehicle after the vehicle has completed a designated route.

91. The goods and services recited in Defendant's application are closely related, if not identical to, the goods and services in Class 42 for which Plaintiff holds federal registrations for ZONAR and ZONAR (and Design).

92. Defendant's application to register ZONAR should be cancelled on grounds of non-use, likelihood of confusion with existing registrations, and for knowingly making false statements or misrepresentations during the application process, pursuant to the Court's authority to "determine the right to registration" and "rectify the register" under 15 U.S.C. § 1119.

## REQUEST FOR RELIEF

Wherefore, Plaintiff Zonar Systems, Inc., respectfully requests the following relief:

a. An order granting judgment for Zonar Systems, Inc., on all Counts;

b. An order that Defendant, its principals, agents, employees, successors, heirs, and representatives, and those acting in concert with them or any of them, be preliminarily and permanently enjoined and restrained from using the ZONAR mark or any mark confusingly similar to the ZONAR mark;

c. An order that Defendant take such action with respect to the Domain, ZONAR.COM, to cause it to be transferred to the ownership of Zonar Systems, Inc.;

d. An award of actual and statutory damages as permitted by law;

e. An award of its reasonable attorneys' fees, costs, and interest;

f. In the alternative, an order requiring specific performance of the Parties' agreement for the transfer of the Domain;

g. Any such other and further relief as the Court may deem just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all counts which are so triable.

Dated: February 10, 2025

PLAINTIFF
ZONAR SYSTEMS, INC.
By its Attorneys,

/s/ Christpher A. McAlpin
Kara Thorvaldsen BBO #660723 (*pro hac vice* admission pending)
E-mail: kthorvaldsen@lawson-weitzen.com
Christopher A. McAlpin (FL Bar No. 1039656)
E-mail: cmcalpin@lawson-weitzen.com
LAWSON & WEITZEN, LLP
88 Black Falcon Avenue, Suite 345
Boston, MA 02210
Telephone: (617) 439-4990
Facsimile: (617) 439-3987